IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA MOBILITY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11 C 7373 |
| ) | |
| MYRIAD FRANCE SAS and MYRIAD ) | |
| GROUP AG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Motorola Mobility, Inc. has sued Myriad France SAS and Myriad Group AG for breach of contract, alleging that they failed to comply with their contractual obligations to indemnify Motorola Mobility for damages it sustained as a result of defective software they produced. Myriad France has moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6). Myriad Group has moved to dismiss the claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the reasons stated below, the Court grants Myriad France's motion in part and denies Myriad Group's motion.

### Background

The Court draws the following facts from the allegations in plaintiff's complaint, which it accepts as true for purposes of the motions to dismiss. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). On a Rule 12(b)(2) motion, the Court may also consider facts set forth in affidavits, resolving any

factual disputes in favor of the plaintiff. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

In October 1999, Motorola, Inc., and Phone.com, Inc. entered into a Master License and Services Agreement (MSA) under which Phone.com agreed to license messaging and browser software for use in Motorola phones. The MSA has been amended multiple times since it was signed, including amendments substituting Motorola Mobility ("Motorola") for Motorola, Inc. and Openwave Systems for Phone.com. Myriad France was later substituted for Openwave. Myriad France does not dispute that it is bound to Phone.com's or Openwave's obligations under the MSA and amendments. Rather, it disputes only what those obligations entail. Myriad Group, which is Myriad France's parent corporation, disputes that it has any obligations under the MSA.

The MSA contains two provisions that are particularly relevant to the allegations made by the parties in this case. Section 14.1, which appears in an amendment to the original MSA, states:

> [Myriad France] agrees to defend, indemnify, and hold harmless Motorola from and against any claim, suit, or proceeding and any damages, liability, or other expenses (including, but not limited to, reasonable attorneys' fees and court costs) which arise out of or result from: (i) gross negligence or wrongful acts of employees of [Myriad France] while performing [Myriad France's] obligations hereunder . . . .

Myriad France Ex. 2 at 3. Section 16.2, which is entitled "Licensed Software Warranties," states:

> [Myriad France] warrants to Motorola, and solely for the benefit of Motorola, that for a period of ninety (90) days after delivery of each commercially released version of the . . . Software to Motorola, such version . . . will perform in accordance with the applicable . . . Software Specification . . . . During the above

2

> noted warranty period, [Myriad France's] obligation for any breach of the warranty shall be to remedy the breach without additional charge to Motorola.

Myriad France Ex. 1 at 3-4.

Motorola alleges that defendants have breached several terms of the MSA. In count one of its complaint, Motorola claims that Openwave designed, developed, and delivered a defective mobile phone browser that Motorola included in a mobile phone it sold to Verizon. The software failed to promptly terminate browser sessions. This resulted in the overcharging of Verizon customers, who later sued Verizon in a class action. Motorola was contractually obligated to defend and indemnify Verizon for the damages arising out of this action, and Motorola in turn sought defense and indemnification from Openwave, which refused Motorola's request. Motorola ultimately paid a portion of the costs of settling the Verizon class action and alleges that it was thereby damaged "in excess of $500,000." *Id*. ¶ 27. Motorola now seeks indemnification from defendants for this amount.

In counts two and three, Motorola alleges that Openwave delivered two additional defective software products, the first in late 2008 and early 2009 and the second in 2010. Both of these products were included in phones that Motorola was developing for Tracfone, which discovered both defects during pre-release testing. Motorola alleges that the first piece of defective software caused Tracfone to cancel its purchase, damaging Motorola "in an amount exceeding $5 million." *Id*. ¶ 34. Motorola alleges that the second piece of defective software delayed release of the product, damaging Motorola "in an amount exceeding $1.7 million." *Id*. ¶ 42. Motorola claims that its requests for indemnification for both amounts were rejected. It argues that

3

defendants breached the MSA in two ways: via their gross negligence in design and development of the defective software, and by refusing to indemnify Motorola for the consequences.

On December 21, 2010, Motorola filed suit in Cook County Circuit Court against Myriad France, Myriad Group, and Openwave. Motorola later agreed to dismiss Openwave from the case, and the circuit judge entered an order to that effect on October 6, 2011. On October 18, 2011, defendants removed the case to federal court.

### I. Myriad France's motion to dismiss

**A. Count one**

**1. Illinois Supreme Court Rule 103(b)**

Myriad France argues that the Court should dismiss count one under Illinois Supreme Court Rule 103(b), which states,

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct.

Ill. S. Ct. R. 103(b). Although Rule 103(b) is a state procedural rule, "federal courts may apply state procedural rules to pre-removal conduct." *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001).

Motorola first asserted count one in its state court complaint on December 21, 2010. Motorola concedes that it did not serve Myriad France until August 29, 2011. Myriad France contends that this delay amounts to a failure of reasonable diligence. It contends that Motorola knew Myriad France's address, amended its complaint without

4

attempting service on Myriad France, and demonstrated the ease with which it could have served Myriad France at any time by completing service three weeks after filing the second amended complaint.

The standard for dismissal under Rule 103(b) involves "a fact-intensive inquiry suited to balancing, not bright lines." *Hinkle v. Henderson*, 135 F.3d 521, 524 (7th Cir. 1998). The Court may consider factors including the "length of time used to obtain service; activities of plaintiff; plaintiff's knowledge of defendant's location; ease with which defendant's whereabouts could have been ascertained; defendant's actual knowledge of the pendency of the action; and special circumstances which would affect plaintiff's efforts." *Cannon v. Dini*, 226 Ill. App. 3d 82, 86, 589 N.E.2d 653, 656 (1992).

Motorola does not dispute that it knew Myriad France's location or could easily have determined it. In fact, Motorola has provided no explanation for its delay (prior to mid-July 2011) in serving Myriad France. It argues, however, that "special circumstances" rendered its delay in service reasonable. In particular, Motorola asserts that Myriad France "was aware of the software defects at issue . . . no later than December 2006, the likelihood of a lawsuit on those issues no later than October 2010, and the filing of the lawsuit by January 2011." Pl.'s Resp. at 11.[1] It also argues that both Myriad France and Myriad Group moved to quash service of the first amended complaint on "two affiliates of Myriad France," indicating that "Myriad France was aware of this lawsuit no later than July 11, 2011." *Id*. at 12.

---

[1] The citations in Part I of this opinion refer to the parties' submissions on Myriad France's motion to dismiss; the citations in Part II refer to the submissions on Myriad Group's motion.

5

Although Motorola refers to these factors as "special circumstances," there is no indication that they are "special circumstances *which would affect plaintiff's efforts*." *See Cannon*, 226 Ill. App. 3d at 86, 589 N.E.2d at 656 (emphasis added). They are therefore more properly analyzed as indicating "defendant's actual knowledge of the pendency of the action." *Id*. Myriad France does not dispute the allegations regarding what it knew when, but it contends that Motorola's delay in service was nonetheless "unreasonable as a matter of law." Def.'s Reply at 3. Myriad France argues that its knowledge of a potential claim is not the same thing as knowledge of the pendency of an action, and the earliest it could have known that an actual lawsuit was in place was July 11, 2011. The Court agrees. Thus, the length of time that passed between filing of the complaint and Myriad France's knowledge of the lawsuit was about six-and-one-half months.

Illinois courts have dismissed cases under Rule 103(b) for similar delays. *See, e.g.*, *Hinkle*, 135 F.3d at 524 ("Hinkle's eight-month delay in this case is unreasonable under Illinois law."); *Long v. Elborno*, 376 Ill. App. 3d 970, 980, 875 N.E.2d 1127, 1134 (2007) (delay of seven months and three days); *Tischer v. Jordan*, 269 Ill. App. 3d 301, 308, 645 N.E.2d 991, 996 (1995) (delay of six months); *Paglis v. Black*, 178 Ill. App. 3d 1062, 1064, 534 N.E.2d 206, 208 (1989) (delay of five-and-one-half months without explanation); *Segal v. Sacco*, 175 Ill. App. 3d 504, 507, 529 N.E.2d 1038, 1040 (1988) (contrasting too-short four-and-one-half month period with cases of dismissal for seven- and eight-month delays); *Penrod v. Sears, Roebuck & Co.,* 150 Ill. App. 3d 125, 129, 501 N.E.2d 367, 369 (1986) (delay of a little over eight months after filing of suit and a little over seven months after issuance of summons).

Illinois courts have also distinguished cases in which unsuccessful "attempts were made to effect service" excused delays of similar lengths from cases in which "plaintiff made *no* effort to serve defendant for nearly eight months." *Sinn v. Elmhurst Med. Bldg., Ltd.*, 243 Ill. App. 3d 787, 791-92, 612 N.E.2d 932, 936 (1993) (emphasis in original) (citing *Cannon*, 226 Ill. App. 3d at 87, 589 N.E.2d at 653); *see also Dupon v. Kaplan*, 163 Ill. App. 3d 451, 455, 516 N.E.2d 727, 729 (1987) ("[Plaintiff's three] immediate initial attempts to serve [defendant] at his proper address establish that [she] was diligent in her attempts to obtain service."). Motorola does not argue that it made any attempts to serve Myriad France or to notify it of the pendency of this lawsuit before mid-July 2011, nearly seven months after Motorola filed its complaint. Nor does Motorola provide any explanation for its delay prior to July 2011. The Court concludes that this demonstrates a lack of reasonable diligence under Rule 103(b) and dismisses count one with respect to Myriad France.

The parties disagree regarding the application of the statute of limitations, which affects whether dismissal under Rule 103(b) is with or without prejudice. Myriad France argues that the applicable statute of limitations for this claim is the four-year period established by the Illinois Uniform Commercial Code for contracts involving the sale of goods. 810 ILCS 5/2-725. Motorola does not dispute Myriad France's contention that the UCC applies to software transactions like this one, but it argues that its indemnity claim is governed by the limitations period for claims involving written contracts, which in Illinois is ten years. 735 ILCS 5/13-206. Myriad France correctly points out, however, that the ten-year statute begins with the phrase "[e]xcept as provided in Section 2-275 of the Uniform Commercial Code." *Id*. Myriad France is therefore correct that a four-

year limitations period applies to this claim.

Myriad France argues further that the claim accrued more than four years before service (the relevant date under Rule 103(b)) because the date of its alleged refusal to comply with Motorola's request for indemnification was in 2006. Motorola correctly points out, however, that the complaint does not allege the date on which this refusal occurred and that the plaintiff is not required to anticipate or negate the affirmative defense of limitations in the complaint. *See Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993). Motorola also disputes when the claim accrued. Because the Court cannot determine at this stage whether the limitations period had run before Motorola served Myriad France, its dismissal of count one against Myriad France is without prejudice. Assuming Motorola amends to reassert the claim, the Court will decide the statute of limitations issue, if appropriate, at a later stage of the litigation.

  **2. Indemnification**

Because the Court anticipates that Myriad France's second argument for dismissal of count one may resurface if Motorola reasserts count one, the Court addresses the argument here. Myriad France contends that count one should be dismissed because the claim "does not meet Section 14.1 [of the MSA's] stated requirement for indemnification." Def.'s Mem. at 9. According to Myriad France, the complaint does not state any more than a conclusory allegation of breach of contract. Moreover, according to Myriad France, the alleged defect cannot constitute "gross negligence" under section 14.1 because of the inclusion in section 16.3 of the MSA of the statement that "neither party warrants that use of the licensed software will be uninterrupted or error free," Def. Ex. 1 at 5, and the ninety-day warranty provision

stating that the remedy for any software error is limited to error correction without charge.

Motorola alleges in the complaint that Openwave delivered defective software; the defect resulted in a class action against which Motorola was obligated to defend and indemnify Verizon; and Openwave then refused to defend and indemnify Motorola. The Court agrees with Motorola that these constitute allegations that, if proven, could establish that Myriad France has breached its indemnification obligations under the terms of the MSA, entitling Motorola to relief.

Furthermore, the warranty provisions cited by Myriad France cannot foreclose the possibility of an indemnity claim. If the only possible remedy for a software defect leading to an indemnity claim were the free error correction described in section 16.2 of the MSA, that would effectively render the indemnity provision superfluous. Motorola is not seeking compensation based on the defect itself, but rather for the damages it sustained as a result of the lawsuit based on the defect. If Motorola could not bring a claim under section 14.1 of the MSA for lawsuits like this one, it is not clear what purpose that provision would serve. "A court will not interpret a contract in a manner that would nullify or render provisions meaningless." *Thompson v. Gordon*, 241 Ill. 2d 428, 442, 948 N.E.2d 39, 47 (2011). For these reasons, the Court concludes that Myriad France's remaining arguments concerning count one would not merit dismissal of Motorola's claim.

**B.     Counts two and three**

Myriad France correctly contends that Motorola essentially makes two allegations of breach of contract for each of counts two and three: negligence in design and

9

development of the software, and failure to indemnify Motorola for the damages it has suffered based on its transactions with Tracfone.

### 1. Negligence

Myriad France argues first that the MSA does not provide a basis for the negligence claim because it is a license agreement, not a contract to design and develop software. The Court agrees that Motorola cannot point to a specific provision of the MSA that has been breached by the allegedly negligent software design. Although the complaint states that Myriad France's negligent design was itself a breach, the terms of the MSA itself "must prevail over the averments [in the complaint] differing therefrom." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) (internal quotation marks and citations omitted).

Motorola argues that its claim is authorized under section 16.2, which provides a ninety-day warranty for software defects. Myriad France points out that section 16.2 covers only the "commercially released" version of software, whereas the complaint alleges that the alleged defects were discovered during "pre-release" testing by Tracfone. Second Am. Compl. ¶¶ 31, 39. This fact does not conclusively establish that the version of the software at issue was not the commercially released version. Even if, however, the software was subject to the warranty, the only remedy for this under the contract would be free error correction, not monetary damages. Motorola argues that the warranty provision is rendered "toothless" if Motorola cannot seek damages for its breach, Pl.'s Resp. at 8, but this argument is unavailing. The provision establishes a remedy for defective software, and Motorola does not allege in its complaint that Myriad France failed to provide this remedy. Instead, it seeks damages specifically for the

allegedly defective design of the software, which the MSA does not authorize. The Court therefore concludes that, to the extent that Motorola's complaint makes separate claims for negligence, those claims must be dismissed.

### 2. Indemnification

Myriad France next argues that the Court should dismiss the indemnity claims because – unlike in count one – Motorola does not allege in counts two and three that it has been damaged through a third-party lawsuit arising out of defects in the software. Instead, Motorola claims in count two that it was damaged when Tracfone cancelled its purchase of one product and in count three that a defect caused a delay in release of another product. Myriad France argues that section 14.1 of the MSA provides for indemnification only for third-party claims against Motorola, not for damages sustained directly by Motorola as a result of Myriad France's actions.

In section 14.1 of the MSA, Myriad France "agrees to defend, indemnify, and hold harmless Motorola from and against any claim, suit or proceeding and any damages, liability or other expenses (including, but not limited to, reasonable attorneys' fees and court costs) which arise out of or result from" negligence by Myriad France employees. Def. Ex. 2 at 5. Myriad France contends that although this language may not expressly preclude indemnification for claims other than those made by third parties, it does not provide sufficiently clear coverage of claims between the contracting parties to allow Motorola's claim in this case to proceed.

The parties dispute which state's law governs the construction of section 14.1. Although the MSA initially provided that California law would govern its construction, it was amended on December 1, 2008 to say that Delaware law applies. Motorola

suggests in its brief that because the allegedly defective software at issue in count two was delivered to Motorola in "late 2008 and early 2009," California law may govern this claim. The Court concludes that it need not resolve this question because the MSA allows for Motorola's claims under either state's law.

In *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1165 (Del. 1978), the Delaware Supreme Court noted that "only losses which reasonably appear to have been intended by the parties are compensable under" a contract of indemnity. The court then found that a contract in which one party promised to hold another "harmless from any and all claims, liabilities and causes of action . . . resulting from any and all acts or omissions of" the first party was one that "normally contemplates the need to defend against [third] party claims as opposed to claims among contracting parties." *Id*. Courts reached similar results in two federal cases in the District of Delaware. *See Pinkert v. Olivieri*, No. Civ. A. 99-380, 2001 WL 641737, at *6 (D. Del. May 24, 2001) (finding that agreement to "defend, indemnify, and hold Owner harmless from and against any and all loss, cost, expense, liability, actions, and claims whatsoever (including, without limitation, reasonable attorneys fees and court costs)" did not cover claims between contracting parties); *DRR, LLC v. Sears, Roebuck & Co.*, 949 F. Supp. 1132, 1134 (D. Del. 1996) (finding that agreement to "indemnify, defend and hold harmless Seller . . . from any claims, costs (including reasonable attorneys fees and court and arbitration costs), expenses, direct or indirect, causes of action, penalties, liabilities, losses and damage" did not cover claims between contracting parties).

By contrast, a judge in this district applying Delaware law found that an

12

agreement to "indemnify, defend and hold [plaintiff] harmless . . . against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of [defendant] contained herein" provided for indemnity regarding claims between contracting parties. *Broaddus v. Shields*, No. 08 C 4220, 2010 WL 3516110, at *5-6 (N.D. Ill. Sept. 1, 2010). The court in *Broaddus* cited a Delaware Supreme Court case in which, although the issue was not specifically contested, the court upheld an indemnity claim between the parties for "damages," which was defined under the relevant contract as "any and all costs, losses, liabilities, damages, lawsuits, deficiencies, claims and expenses, including without limitation, reasonable attorneys' fees and amounts paid in investigation, defense or settlement of any of the foregoing." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 190, 197-98 (Del. 2009).

California law clearly provides that agreements of the type at issue here cover first-party indemnity claims. In *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1023, 124 Cal. Rptr. 3d 105, 113 (2011), a California appellate court construed an agreement that said, "[Defendant] shall indemnify, hold harmless and defend [plaintiff] . . . from and against any and all damages, losses incurred by [plaintiff] that arise from or are in connection with: . . . (b) Any breach or default by [defendant] of its covenants or agreements contained in this Agreement." The court noted that "the California Supreme Court has defined 'indemnity' as 'the obligation resting on one party to make good a loss or damage another party has incurred,'" a definition not limited to third-party claims. *Id.* at 1025, 124 Cal. Rptr. 3d at 114 (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628, 532 P.2d 97, 100 (1975)). Citing a number of other California state and federal cases that reached similar results, the court in *Zalkind* concluded that the

13

provision at issue did "not expressly limit the meaning of 'indemnify' to third party claims" and therefore allowed for claims between the contracting parties. *Id*. at 1026, 124 Cal. Rptr. 3d at 116.

Delaware law on this issue appears to construe the contractual language more narrowly than that of California, and section 14.1 of the agreement between Motorola and Myriad France is not worded quite as expansively as those for which the cases cited above allowed indemnity claims. Nonetheless, the Court concludes that the MSA allows for Motorola's claims. Nothing in the section expressly limits indemnity to third-party actions. More to the point, section 14.1, which promises indemnification "against any claim, suit or proceeding *and* any damages, liability or other expenses," Def. Ex. 2 at 5 (emphasis added), separates the language referring to lawsuits from "damages," indicating that these are distinct obligations. Motorola's suggested reading of the provision is therefore the correct one: Myriad France has agreed to "indemnify . . . Motorola . . . from . . . any damages . . . or other expenses . . . which arise out of or result from" the negligence of Myriad France employees.

### 3. Limitation of liability

The MSA includes a provision stating that neither party shall "be liable for any indirect, special or consequential damages of any kind or nature suffered by the other party . . . including, without limitation, lost profits, business interruptions, or other economic loss arising out of the use of the technology." Def. Ex. 3 at 3. Myriad France argues that because Motorola appears to seek damages "for lost profits and economic loss" in count two and "apparently for lost profits and business interruptions" in count three, those claims are barred. Def.'s Mem. at 14-15.

Motorola responds that the complaint contains none of the forbidden words and that it has claimed only that it sustained damages as "a direct and proximate result" of the alleged breaches. Second Am. Compl. ¶¶ 34, 42. The Court agrees. The complaint by its terms seeks only direct damages, and the Court accepts the complaint at face value on a Rule 12(b)(6) motion. *See United States v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 834 (N.D. Ill. 2007) (denying a motion to strike that "assumes the plaintiffs are seeking consequential damages even though the complaint does not ask for them, and in their brief opposing the defendants' motions the plaintiffs state that the damages they seek are not consequential damages").

For these reasons, the Court dismisses, as to Myriad France, count one and the portions of counts two and three that seek damages for Myriad France's alleged negligence in design and development of software. The Court otherwise denies Myriad France's motion.

## II. Myriad Group's motion to dismiss

Myriad Group argues that the Court should dismiss all of Motorola's claims for lack of personal jurisdiction pursuant to Federal Rule of Procedure 12(b)(2) because it "is not a party to the contract at issue and does not conduct business in Illinois." Def.'s Mem. at 1. The parties discuss in their briefs three possible bases for personal jurisdiction: general jurisdiction, specific jurisdiction, and "alter ego" or "substantial control" jurisdiction based on Myriad Group's ownership of Myriad France. The Court concludes that Motorola's allegations are sufficient to establish specific jurisdiction over Myriad Group.

15

A non-resident defendant like Myriad Group may be sued in Illinois "on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). For specific jurisdiction to be constitutionally permissible, a court "must decide whether a defendant has 'purposefully established minimum contacts with the forum State' and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). "[I]n a breach of contract case, it is only the dealings *between the parties in regard to the disputed contract*" that are relevant to minimum contacts analysis." *Id*. at 1278 (emphasis in original).

Myriad Group focuses much of its argument on the fact that it is not a party to the MSA. This, however, does not establish that it cannot be subject to personal jurisdiction, a question that depends not on the viability of Motorola's breach-of-contract claim but on Myriad Group's contacts with Illinois in connection with the MSA. Myriad Group cites *Hess Newmark Owens Wolf Inc. v. Owens*, No. 04 C 4821, 2004 WL 2203415 (N.D. Ill. Sept. 29, 2004), to support its contention that a non-party to a contract can never be subject to personal jurisdiction on a claim for breach, but it overstates the holding of the case. The plaintiff in *Hess* asserted that the court had jurisdiction under 735 ILCS 5/2-209(a)(7), which depends on a defendant's making or performing a contract in Illinois. The court specifically noted that the plaintiff was not relying on section 2-209(c), unlike Motorola in the present case.

Motorola's response to Myriad Group's motion to dismiss includes an affidavit by

16

Paul Doucette, a Motorola senior manager. Doucette alleges that his "primary contact at Myriad Group was Joe Pienta," an account executive for the company. Doucette Aff. ¶ 12. He alleges further that Pienta

> communicated on a regular basis by phone and e-mail with me and other Motorola employees in Illinois regarding performance and payment issues relating to the SDA, the MSA, and the software developed for Motorola under both agreements, including some of the software at issue in this case. Mr. Pienta met in person several times a year with Motorola employees in Illinois to discuss ongoing work being performed by Myriad Group or Myriad France for Motorola.
>
> In 2009, Mr. Pienta participated in at least one meeting in Illinois with Motorola and TracFone to discuss the software defects at issue in this case. Mr. Pienta also discussed with other Motorola employees in Illinois potential ways for Motorola and Myriad to resolve the disputes involving the software defects at issue in this case.

*Id*. ¶¶ 13-14. Assuming the truth of these allegations, which are not contradicted by any facts asserted by Myriad Group, the Court finds them sufficient to establish the requisite minimum contacts by Myriad Group with Illinois in connection with the MSA. The Court therefore denies Myriad Group's motion to dismiss.

## Conclusion

For the reasons stated above, the Court grants Myriad France's motion to dismiss in part and denies it in part [docket no. 16] and denies Myriad Group's motion to dismiss [docket no. 13].

                                                                     _____
                                                                         MATTHEW F. KENNELLY
                                                                         United States District Judge

Date: February 2, 2012