**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MOTOROLA MOBILITY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 7373** |
| | ) | |
| **MYRIAD FRANCE SAS and MYRIAD** | ) | |
| **GROUP AG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW  F. KENNELLY, District Judge:

Motorola Mobility, Inc. has sued Myriad France SAS and Myriad Group AG for

breach of contract, alleging that they failed to comply with their contractual obligations to

indemnify Motorola Mobility for damages it sustained as a result of defective software

they produced.  Both defendants filed motions to dismiss, one of which the Court

granted in part.  *Motorola Mobility, Inc. v. Myriad France SAS*, __ F. Supp. 2d __, 11 C

7373, 2012 WL 367118 (N.D. Ill. Feb. 2, 2012).

Motorola Mobility has since filed a third amended complaint.  Both defendants

have moved to dismiss the third amended complaint in its entirety.  Myriad France's

motion incorporates part of a motion it previously filed seeking reconsideration of a part

of the Court's previous decision.  For the reasons stated below, the Court grants Myriad

France's motions in part (thereby modifying the Court's February 2, 2012 decision) and

terminates Myriad Group's motion as moot.

**Background**

The Court draws the following facts from the allegations in Motorola Mobility's
complaint, which the Court accepts as true for purposes of the motions to dismiss.
*Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 853 (7th Cir. 2012).

As the Court explained in its previous decision, with which the Court assumes
familiarity, Motorola, Inc. and Phone.com, Inc. entered into a Master License and
Services Agreement (MSA) in October 1999. Phone.com agreed to license messaging
and browser software for use in Motorola phones. Later, Motorola Mobility ("Motorola")
was substituted for Motorola, Inc. Openwave Systems was substituted for Phone.com,
and Myriad France was later substituted for Openwave. Myriad France does not
dispute that it is bound to Phone.com's and Openwave's obligations under the MSA and
several of its amendments. Myriad Group is Myriad France's parent corporation.

Motorola alleges that defendants breached the MSA by delivering defective
software products on three occasions and failing to address the consequences
adequately. First, Motorola claims that in 2005, Openwave designed, developed, and
delivered a defective mobile phone Internet browser that Motorola included in a mobile
phone it sold to Verizon. The software failed to promptly terminate browser sessions.
This resulted in the overcharging of Verizon customers, who later sued Verizon in a
class action. Motorola was contractually obligated to defend and indemnify Verizon for
the damages arising out of this action, and Motorola in turn sought defense and
indemnification from Openwave, which refused Motorola's request. Motorola ultimately
paid a portion of the costs of settling the Verizon class action and alleges that it was
thereby damaged "in excess of $500,000." Third Am. Compl. ¶ 29. In count one of its

2

complaint, Motorola seeks indemnification from defendants for this amount.

Motorola also alleges that Openwave designed, developed, and delivered a second defective software product in late 2008 and early 2009. The defect caused mobile phone browsers to issue an erroneous message that rendered the browser unusable. Motorola included the software in phones it was developing for Tracfone, which discovered the defect during pre-release testing. "Motorola immediately notified Defendants of the defect and asked Defendants to remedy the defect." *Id.* ¶ 33. "Defendants failed to timely remedy the defect, and, as a result, [Tracfone] cancelled its purchase of the phone from Motorola." *Id.* This caused Motorola to be damaged "in excess of $5 million," *id.* ¶ 36, for which it sought indemnification but was refused. Motorola seeks damages for defendants' failure to indemnify (count two) and for defendants' breach of the warranties set out in the MSA (count three).

Finally, Motorola alleges that Openwave designed, developed, and delivered a defective software product in 2010 that rendered the browser unusable. Motorola included the software in phones it was developing for Tracfone, which again discovered the defect during pre-release testing. This delayed the release of the phone, damaging Motorola "in excess of $1.7 million." *Id.* ¶ 47. Motorola again notified defendants of the defect immediately, but they failed to remedy the problem, and they later rejected Motorola's request for indemnification. Motorola seeks damages for defendants' failure to indemnify (count four) and for breach of the software warranties (count five).

In Myriad France's previous motion to dismiss, it argued that section 14.1 of the MSA, on which Motorola bases its indemnification claims, did not provide a basis for relief. That provision states, in relevant part:

3

> Scope of Indemnification.  PHONE.COM agrees to defend, indemnify, and hold harmless Motorola from and against any claim, suit or proceeding and any damages, liability, or other expenses (including, but not limited to, reasonable attorneys' fees and court costs) which arise out of or result from:  (I) gross negligence or wrongful acts of employees of PHONE.COM while performing PHONE.COM's obligations hereunder; and/or (ii) infringement of any third party patent, copyright, trade secret, or trademark rights.

*Id.* Ex. B. at 40.  Myriad France contended that the MSA was an agreement to license software, not to design or develop it, and that its "obligations hereunder" did not include the provision of functioning software.  The Court ruled that Motorola's allegations "that Openwave delivered defective software; the defect resulted in a class action against which Motorola was obligated to defend and indemnify Verizon; and Openwave then refused to defend and indemnify Motorola" constituted "allegations that, if proven, could establish that Myriad France has breached its indemnification obligations under the terms of the MSA, entitling Motorola to relief."  *Motorola Mobility*, 2012 WL 367118, at *5.  The Court also stated that if "Motorola could not bring a claim under section 14.1 of the MSA for lawsuits like this one, it is not clear what purpose that provision would serve."  *Id.*  Motorola now seeks reconsideration of this ruling.

Myriad Group has, throughout this litigation, contended that it cannot be held liable under the MSA because only Myriad France succeeded to Phone.com's and Openwave's obligations.  Motorola contended that it could "pierce the corporate veil" to reach Myriad Group as Myriad France's parent company, but Myriad Group maintained in its motion to dismiss that Motorola had failed to allege a sufficiently close relationship between the companies for that doctrine to apply.  After these motions were fully briefed, however, the parties filed a joint stipulation in which they ask the Court to hold Myriad France and Myriad Group "jointly and severally liable for any and all claims and

4

damages for which one or the other entity is found to be liable in this case." Joint Mot. to Amend/Correct at 2. They also ask the Court to allow the filing of a fourth amended complaint alleging the same claims directly against both Myriad France and Myriad Group and to allow the withdrawal of Myriad Group's motion to dismiss the third amended complaint as moot.

The Court grants these requests. Although Motorola did not attach its proposed fourth amended complaint to the motion, the parties state that Myriad France's motion to dismiss the third amended complaint is "fully applicable to the Fourth Amended Complaint and ripe for decision by the Court." *Id.* at 3. The Court will therefore proceed to rule on Motorola's claims as they are alleged in the third amended complaint.

## Discussion

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

## 1. Indemnification

Defendants have moved the Court to reconsider its decision regarding the previous version of the complaint. Because Motorola's third (and fourth) amended

5

complaint contain similar claims, defendants have incorporated the arguments from their motion to reconsider the earlier decision into their motion to dismiss counts one, two, and four of the current version of the complaint. Defendants' argument that Motorola cannot obtain damages for the software errors it discusses essentially has three parts: the MSA does not obligate them to provide functioning software; the warranty provisions contain only limited remedies that do not contemplate damages; and the indemnification provision is not intended to cover first-party claims.

### a. Obligations outside the warranty provisions

As noted, section 14.1 of the MSA provides for indemnification for "gross negligence or wrongful acts of employees of PHONE.COM while performing PHONE.COM's obligations hereunder." Defendants contend that this cannot provide a basis for Motorola's claims because nothing in the MSA (outside of the warranty provisions, which the Court will discuss below) obligates them to provide functioning software.

First, defendants maintain that section 14.1 is intended to provide "standard indemnification for claims based on the tortious acts of the company's employees while interacting and servicing the software, such as personal injury, theft, or misappropriation." Defs.' Mot. to Reconsider at 6. There is no language in section 14.1 or elsewhere in the MSA establishing that this is the sole purpose of the provision, and the Court agrees with Motorola that it may not read absent language into a written contract. Defendants' contention, however, may address the Court's previously stated concern that section 14.1 would be superfluous if it did not cover claims for software errors.

6

As quoted earlier, however, section 14.1 deals with negligent or wrongful acts by defendants while performing their "obligations hereunder," that is, under the MSA. Defendants' primary assertion is that their obligations under MSA do not include providing properly functioning software, because the MSA is not an agreement to design or develop software, but only to license software that already exists. *See* Third Am. Compl. Ex. B at 1 (fifth recital, stating that the parties to the MSA are setting forth the terms under which each party will license software to the other and provide maintenance and support services).

Motorola responds that "[s]everal provisions of the MSA obligate Myriad to provide functioning software." Pl.'s Resp. to Defs.' Mot. to Reconsider at 6. Other than the MSA's warranty provisions, however, the only portion of the MSA that Motorola cites is an appendix to an amendment added to the MSA in 2005. The opening portion of the appendix states as follows:

> APPENDIX E - Custom Development
>
> The provisions of this Appendix will apply to the Custom Development Services provided to Licensee under this Agreement. Separate Ordering Documents or Statements of Work (SOW) will specify the Services to be provided for the development of unique features and applications to customer specifications and/or bug fixes and enhancements to prior efforts.
>
> "Services" will mean work performed by Openwave for Customer pursuant to an Ordering Document or SOW agreed to by the parties in writing, under this Agreement. The schedule for Services will be agreed upon by the parties, subject to availability of Openwave personnel.
>
> "Ordering Document" or "Statement of Work (SOW)" will mean Openwave's standard form for ordering Services which specifies the Services and applicable fees. Each Ordering Document or SOW will be governed by the terms of this Agreement and will reference the Effective Date of such.

Defs.' Mot. to Reconsider Ex. 3.

Motorola contends that the MSA "incorporates [the ordering documents or statements of work] by reference," that those documents "further identify unique software features and applications for specific Motorola customers," and that "any failure by Myriad to comply with any of these software specifications is a breach of the indemnification provision."  Pl.'s Resp. to Defs.' Mot. to Reconsider at 6-7.  Motorola has not, however, provided any examples of ordering documents or statements of work. Nor has it identified any provisions of any such documents that establish an obligation that it claims Myriad breached.  In addition, defendants contend that because "[i]t is those agreements that provide the terms of whether a software error can constitute an actionable claim for damages, not the MSA," section 14.1 does not extend to any breach of defendants' obligations under an ordering document or statement of work. Defs.' Mot. to Reconsider at 7.

The Court concludes that defendants have the stronger argument.  Motorola's argument is that Myriad's obligations under the MSA include providing software that functions according to the specifications in the ordering documents or statements of work.  Nothing in the language quoted above, however, indicates that these documents give rise to an "obligation" regarding functioning software.  Nor does the remainder of Appendix E, which addresses licensing and pricing rather than product specifications.

Other than the warranty provisions, Motorola has not cited any other provision in the MSA in support of its argument.  After reviewing the entire MSA, the Court has not found any other provision that suggests that Myriad employees' obligations under the MSA extend to providing properly functioning software.  The Court concludes that no provision of the MSA outside the warranty section obligates defendants to provide

functioning software.

### b. Warranty provisions

Defendants contend that the MSA's warranty provisions address any obligation they might have to deal with software errors. In particular, they point to the following disclaimer:

> 16.3 <u>Warranty Disclaimer</u>. EXCEPT AS PROVIDED SPECIFICALLY IN SECTION 16.2.1 [and] 16.2.2[,] EACH PARTY PROVIDES NO WARRANTY, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AND SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT OF THIRD PARTY RIGHTS, OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE APPLICABLE LICENSED SOFTWARE . . . . NEITHER PARTY WARRANTS THAT USE OF THE LICENSED SOFTWARE WILL BE UNINTERRUPTED OR ERROR FREE.

Third Am. Compl. Ex. B at 43. Defendants argue that the last sentence of this paragraph affirmatively indicates that nothing in the agreement outside of sections 16.2.1 and 16.2.2 obligates them to provide error-free software. Motorola responds that because those sections "are expressly exempted from the warranty disclaimer . . . [the disclaimer] does not alter Myriad's obligations to provide functioning software and has no relevance to the scope of the indemnification provision." Pl.'s Resp. to Defs.' Mot. to Reconsider at 7.

Section 16.2.1 provides:

> PHONE.COM warrants to Motorola, and solely for the benefit of Motorola, that for a period of ninety (90) days after delivery of each commercially released version of the PHONE.COM Client Software to Motorola, such version of the PHONE.COM Client Software . . . will perform in accordance with the applicable PHONE.COM Client Software Specification listed in Exhibit B ("Functional Specifications") . . . . During the above noted warranty period, PHONE.COM's obligation for any breach of the warranty shall be to remedy the breach without additional charge to Motorola in accordance with PHONE.COM's obligations to correct Errors under the PHONE.COM Support Agreement.

*Id.* Section 16.2.2 contains similar language.

Defendants argue that these sections are the only source of any obligation on their part to provide functioning software. They argue that even if section 14.1 would otherwise allow for damages for software errors based on the section's ambiguity regarding other "obligations" in the MSA, the warranty provisions would foreclose this, because they specifically address the point. Defendants rely on the proposition that "[i]t is a well-settled principle of contract construction that where a contract contains both general and specific provisions relating to the same subject, the specific provision controls." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 227 (7th Cir. 1993); *see also Jadwin v. County of Kern*, 610 F. Supp. 2d 1129, 1190 (E.D. Cal. 2009); *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).[1] According to defendants, because the warranty provisions specify a remedy for software errors that is limited in time and scope, they control over the more general language of section 14.1.

Motorola responds that the indemnification and warranty provisions provide for "separate and cumulative remedies" because the provisions do not mention each other or reference whether one supersedes the other. Pl.'s Resp. to Defs.' Mot. to Reconsider at 2. Motorola does not address defendants' legal argument regarding the more specific language, however, nor does it provide any support for its preferred interpretation of the contract. The Court concludes that because the warranty provisions are the only provisions in the contract that deal specifically with software

_____

[1]The parties dispute whether Delaware or California law governs the MSA.

10

functioning, they control over the more general indemnification provisions.

Motorola argues that the language of the disclaimer "does not alter Myriad's obligation to provide functioning software." *Id.* at 8. The contention that the warranty provisions create an obligation that provides a basis for indemnification, however, is unavailing. Although Motorola is correct that the disclaimer contains an exception for sections 16.2.1 and 16.2.2, those sections do not create a free-standing obligation to provide functioning software for which section 14.1 provides a remedy. Rather, they create an obligation, self-contained within sections 16.2.1 and 16.2.2, that by its own express terms lasts for ninety days and specifically defines and limits Myriad's obligations in the event of a breach.

Finally, Motorola argues that the warranty provisions' remedy of free error correction is not exclusive and does not foreclose the possibility of a claim for damages. Under both Delaware and California law, a contract must clearly express the intention to make a remedy exclusive. *See, e.g.*, *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 549 (Del. Super. 2005); *Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1455 (9th Cir. 1996). Motorola contends that the statement in the warranty provisions – "During the above noted warranty period, PHONE.COM's obligation for any breach of the warranty shall be to remedy the breach without additional charge" – is insufficient to establish exclusivity.

The Court disagrees. Although Motorola is correct that the provision does not contain a word like "exclusive" or "sole," the clear thrust of the language in context is to establish that the defendant's obligation "*shall* be" error correction. This language identifies Myriad France's obligation in a definite and limited way. Thus, the language of

the warranty provisions is more specific than section 14.1 with respect to the remedy as well as the scope of defendants' obligations. Motorola has not cited, and the Court has not found, cases from Delaware or California specifically analyzing language to this effect, but the Seventh Circuit has found that under Illinois's similar doctrine, "courts have not required such a provision to actually employ the word 'exclusive' [when] a reasonable construction of the contract indicates that the parties intended a limited remedy to be exclusive." *CogniTest Corp. v. Riverside Pub. Co.*, 107 F.3d 493, 498 (7th Cir. 1997); *see also Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 403 (E.D. La. 1998) (under Florida law, "[t]he U.C.C. requires only that the exclusivity be clearly expressed, not that 'magic words' be employed").

For these reasons, the Court concludes that section 14.1 does not provide for indemnification on the basis of software errors and grants the portions of Myriad France's motion for reconsideration and motion to dismiss that seek that holding. The Court acknowledges that this differs from the conclusion it reached in its previous decision. *See Motorola Mobility*, 2012 WL 367118, at *5. After careful review, however, the Court concludes that this is the correct outcome. The Court therefore dismisses counts one, two, and four of Motorola's complaint.

**2.    Breach of warranty**

Motorola's claims in counts three and five are based on its allegations that after Tracfone discovered the software defects at issue, "Motorola immediately notified Defendants of the defect and asked Defendants to remedy the defect" but that "Defendants failed to timely remedy the defect." Third Am Compl. ¶¶ 33, 44. Motorola argues that defendants thereby breached their obligation under the warranty provisions

12

to provide free error correction.

Defendants first point out that the previous version of Motorola's complaint did not include these allegations. Although they appear to suggest that Motorola's late addition of this claim makes the claim less credible, they do not indicate why this should prevent Motorola from amending its complaint or the Court from crediting the allegations on a motion to dismiss. Defendants argue next that Motorola's allegations are inconsistent because the allegations do not specify what Motorola means by "timely" and do not indicate which provision in particular was breached.

These contentions are unavailing. Motorola has clearly alleged that it attempted to avail itself of the warranty provision upon discovering the software defects at issue but that defendants failed to provide what was promised. Motorola has made these allegations with sufficient specificity to survive the motion to dismiss.

Defendants also contend that Motorola's claim cannot succeed because the warranty provisions did not actually cover the software at issue. They maintain that the software at issue "is only required to meet the 'Functional Specifications' attached to the MLSA as Exhibit B, applicable to the software as it existed in 1999" and that these "outdated specifications . . . do not govern the 2008-2010 software at issue in this case." Myriad France Mot. to Dismiss at 11. "Moreover, the alleged software errors (shutdown failure and memory leak) do not render the software non-compliant with the 1999 specifications." *Id.* There is some tension between this argument and defendants' contention, discussed in the previous section, that the warranty provisions provide the exclusive remedy for software errors – it is difficult to see how that could be true if the provisions do not cover the errors at issue. Nevertheless, if defendants are correct that

13

the software errors that occurred were not covered by the specifications listed in the warranty provisions – and that those provisions were not amended to allow for changing software requirements – then they are correct that their failure to address this defect cannot provide a basis for relief under the MSA.

Motorola maintains, however, that it has alleged that the software failed to meet the specifications both in Exhibit B and in the separate "Statement of Work" and "Ordering Documents" and that those specifications governed the software at issue in this case. Motorola is correct that the Court must take its allegations as true unless they are contradicted by documents referred to in the complaint. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999).

Defendants maintain that the original Exhibit B to the MSA indicates that the defects Motorola has alleged cannot constitute a breach. Nothing in that document, however, affirmatively indicates that this is the case. The version of Exhibit B provided by defendants does not indicate the actual requirements for the software. Instead, it references other "documentation [that] shall serve as functional specifications." Myriad France Mot. to Dismiss Ex. D. It also includes the statement: "Functional Specifications shall include specifications published by PHONE.COM for all releases of the PHONE.COM Licensed Products licensed under this Agreement." *Id.* The precise meaning of this statement is not clear, but it suggests that the document allows for other specifications covering future products. And as the Court noted in the previous section, neither party has provided the specific ordering documents that cover the software at issue. The Court therefore takes Motorola's allegations about those documents as true and concludes that, for purposes of the motion to dismiss, Motorola has adequately

14

alleged that the software failed to comply with the specifications that were applicable to it.

Defendants also argue that because section 16.2.1 provides a warranty only for the "commercially released version" of the software, the claim cannot succeed because Motorola alleges that Tracfone discovered the defects during pre-release testing. The Court addressed this argument in its previous decision, noting that the timing of discovery "does not conclusively establish that the version of the software at issue was not the commercially released version." *Motorola Mobility*, 2012 WL 367118, at *6. Defendants argue that this is incorrect because "custom software designed and developed for Motorola cannot be said to be the 'commercially released version' until it clears the pre-release testing authorizing it for commercial release." Myriad France Mot. to Dismiss at 13.

The Court does not agree with defendants, for two reasons. First, the complaint alleges that defendants "breached the Licensed Software Warranties set forth in Section 16.2 of the MSA." Third Am. Compl. ¶¶ 38, 49. Although section 16.2.1 refers to "commercially released" software, section 16.2.2 does not. The language of section 16.2.1 therefore would not, by itself, foreclose Motorola's claims. Second, as the Court indicated in its previous decision, the meaning of "commercially released version" is not clear from the MSA, which contains no definition of the term. Whether the "version" in which errors were discovered was indeed the version that was later released to the public, or whether any changes in the commercially-released software rendered it a new "version," is not yet apparent. The Court therefore declines to dismiss Motorola's claims on this basis.

15

Finally, defendants maintain that because the warranty provisions provide for error correction as an exclusive remedy, Motorola may not sue for damages even if it has successfully alleged a breach. As Motorola argues, however, its claim is based on its allegations that defendants failed to provide error correction at all. The MSA does not limit Motorola's ability to sue for defendants' failure to provide the stated remedy. *See S.F. Bay Area Rapid Transit v. GE Transp. Sys. Global Signaling LLC*, No. C 06-3479, 2010 WL 2179769, at *6 (N.D. Cal. May 27, 2010) (noting that a plaintiff may "pursue all of the remedies available for breach of contract if its exclusive or limited remedy fails of its essential purpose," meaning that "enforcement of the limited remedy would essentially leave plaintiff with no remedy at all") (internal citations omitted); *United States ex rel. Metal Building Components, Inc. v. Angelini*, No. Civ. A 98-8, 2000 WL 1728287, at *4 (D. Del. Mar. 27, 2000).

For these reasons, the Court denies defendants' motion to dismiss counts three and five of the third amended complaint.

## Conclusion

For the reasons stated above, the Court grants in part Myriad France's motion for reconsideration and motion to dismiss [docket nos. 37, 48], grants the parties' joint motion to amend/correct [docket no. 61], and terminates Myriad Group's motion as moot [docket no. 45]. The Court's decision in *Motorola Mobility, Inc. v. Myriad France SAS*, __ F. Supp. 2d __, 11 C 7373, 2012 WL 367118 (N.D. Ill. Feb. 2, 2012) is vacated to the extent it is inconsistent with the present decision. The case is set for a status hearing

on September 4, 2012 at 9:30 a.m. to set a schedule for further proceedings.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 27, 2012