IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOTOROLA MOBILITY, LLC, )
)
    Plaintiff, )
)
vs. ) No. 11 C 7373
)
MYRIAD FRANCE SAS and )
MYRIAD GROUP AG, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Motorola Mobility LLC has sued Myriad France SAS and Myriad Group AG (collectively Myriad), alleging breach of contract, third party beneficiary breach of contract, and breach of implied contract. Defendants have moved for summary judgment.[1] For the reasons stated below, the Court denies Motorola's motion.

## Background

    In 1999, Motorola Mobility's predecessor, Motorola, Inc. (collectively Motorola) entered into a contract with Phone.com, a predecessor-in-interest to Myriad France. This contract, called the Master License and Services Agreement (MLSA), gave Motorola a license to use Phone.com's client software, which included incorporating the software "into Motorola Enabled Devices." Pl.'s Ex. 24-a § 3.2.1(c). Among many other

---

[1] The Court previously deferred final determination of whether to compel arbitration of Motorola's claim for third party beneficiary breach of contract pending ruling on this motion. *See Motorola Mobility, LLC v. Myriad France SAS*, No. 11 C 7373, 2013 WL 4008627 (N.D. Ill. Aug. 4, 2013).

provisions, the MLSA contained a section on indemnification, in which Phone.com agreed to indemnify Motorola against claims resulting from Phone.com's gross negligence in performing the tasks set out in the contract. *Id.* § 14.1. These tasks included delivering client software to Motorola (later defined as browser software), as well as providing maintenance and support help to Motorola related to the software. The MLSA also contained a limitation of liability section that, in its original form, provided that:

> [e]xcept for a breach of section 13 ("Confidentiality"), in no event will either party . . . be liable for any indirect, special or consequential damages of any kind or nature whatsoever, suffered by the other party, any end user, customer, sublicensee, var, enabled device manufacturer, vendor or any distributor, including, without limitation, lost profits, business interruptions, or other economic loss arising out of the performance or non-performance hereunder or any use of or failure to be able to use the technology licensed herein or *any* new products developed pursuant to this agreement. . . .

*Id.* § 15.

The parties to the MLSA made various amendments in the ensuing years, such as extending the term of the contract and substituting party names when the party making the software at issue changed names or was acquired. (The parties do not dispute that the MLSA is still in force, or that Myriad is the predecessor-in-interest to the various parties that came before it, including Phone.com and Openwave.) In 2008, the parties agreed to an amendment in which Myriad's predecessor granted Motorola a license for its mobile browser client software in exchange for "a per-unit royalty fee for each OPENWAVE Enabled Device, manufactured and shipped, sublicensed and/or otherwise distributed by Motorola that incorporates the OPENWAVE Mobile Browser Client Software . . . ." Pl.'s Ex. 24-e ¶ 6. The royalties included a minimum payment of

$4 million for the period of April 1, 2008 to March 31, 2010; Motorola also agreed to pay an annual $495,000 maintenance and support fee for 3500 hours of support per year. *Id.* ¶¶ 6–7. In this amendment, the parties also agreed to modify the liability limitation, removing language applying the limitation to losses arising from performance or non-performance under the MLSA or the "failure to be able to use" the technology. The new version of this provision stated:

> Except for a breach of section 13 ("Confidentiality"), in no event will either party or its respective suppliers or licensors be liable for any indirect, special or consequential damages of any kind or nature whatsoever, suffered by the other party, any end user, customer, sublicensee, var. [sic] enabled device manufacturer, vendor or any distributor, including without limitation, lost profits, business interruptions, or other economic loss arising out of the use the [sic] technology licensed herein or any new products developed pursuant to this agreement.

*Id.* ¶ 13.

In 2000, Phone.com entered into a contract with Compal Communications, Inc., a Taiwanese company, called the Master Browser License Agreement (MBLA). In this contract, Phone.com granted Compal a license to "bundle the Phone.com Client Software with [Compal's] wireless handsets ('Enabled Devices')." Defs.' Holm Decl. Ex. 2 at MYR012194. An "Enabled Device" was defined as "any wireless device manufactured by, or on behalf of, [Compal] and which has the ability to execute the Phone.com Client Software . . . ." *Id.* at MYR012193. The MBLA contained a provision requiring Phone.com to provide maintenance and support services; an attached maintenance and support agreement required Phone.com to "provide Maintenance Support Services to [Compal] to ensure a consistent and high level of operation of the Phone.com Client Software." *Id.* at MYR012207.

In 2007, Myriad's predecessor Openwave and Compal agreed to amend the

3

MBLA. In relevant part, the amendment stated that "Article I ('Definitions') is hereby amended by adding the following sentence to the end of the 'Enabled Device' definition: 'The parties hereby agree that an 'Enabled Device' shall not include any device manufactured or otherwise designed, developed, or distributed by Motorola, Inc.'" *Id.* at MYR012267.

In 2004, Motorola and Compal entered into their own contract. It stated that Compal would develop products and supply them to Motorola, with each product subject to its own development and supply agreement. In an appendix to the contract, Compal agreed to "supply to Motorola . . . all software in the Product, and all test and equipment software needed to manufacture, test, and program the Product (the "Software")." Defs.' Holm Decl. Ex. 4b at MOT0004742. The agreement defined "Software" as "all software in the Product created by CCI, supplied in object code form, and all software in the manufacturing and test equipment, supplied in object and source code form." *Id.* It also stated that "CCI shall supply Motorola with fixes, enhancements and updates to all Software at no charge." *Id.*

In 2007 and 2009, Motorola and Compal entered into development and supply agreements for two separate phone products, one code-named "Grant" and another code-named "Harvey." Each agreement incorporated the parties' prior agreement by reference and included specifications for each phone and a schedule for completion of various tasks associated with building the phone. Each development and supply agreement also contained a listing of third-party software. The Harvey agreement stated that the software was "currently incorporated into the Product." Defs.' Holm Decl. Ex. 6 at MOT0004660. The Grant agreement stated that the software was "authorized

4

for incorporation into the Product."  Defs.' Holm Decl. Ex. 7 at MOT0004639.  Each agreement contained a table of the third-party software and stated that the table contained a notation indicating the party "responsible for making the royalty payment for such software" or "responsible for the royalties for such software."  Defs.' Holm Decl. Ex. 7 at MOT0004639; Defs.' Holm Decl. Ex. 6 at MOT0004660.  Each table contained a "Paid by" column.  The Grant agreement had an entry for "Browser—WAP 2.0," listing Myriad's predecessor Openwave as the vendor, and Motorola in the "Paid by" column.  Defs.' Holm Decl. Ex. 7 at MOT0004639.  The Harvey agreement had an entry for "WAP," with the version stated as "2 (R6.3.0.4)," with Openwave as the vendor, and Motorola in the "Paid by" column.  Defs.' Holm Decl. Ex. 6 at MOT0004660.

The parties agree that some version of Myriad's browser software was included in the Harvey phone, the Grant phone, and a phone that Motorola made for Verizon Communications.  When installed in the Verizon phone, the browser software did not function properly; the discovery of this defect after the phone's release to market prompted a class action lawsuit against Verizon.  Verizon sought indemnification from Motorola in the form of plaintiffs' attorneys' fees, class administrator's fees, and defense attorney's fees.  Motorola made the first of these payments in July 2008.  Motorola made a demand on Myriad to provide indemnification for these payments, but Myriad refused.

Myriad's browser software as used in the Harvey and Grant phones also produced errors.  Motorola was developing each phone for another company called Tracfone.  Tracfone discovered a defect in the Harvey phone during pre-release testing and canceled its release to the public.  Tracfone also discovered an error in the Grant

5

phone during its tests of the product. Myriad repaired the error, and Motorola contends it incurred testing and engineering costs along with a delay in the public release of the Grant phone. Myriad likewise refused to indemnify Motorola for its losses and expenses with respect to these phones.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, courts must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Wilson v. Cook Cnty.*, 742 F.3d 775, 779 (7th Cir. 2014). "To determine whether genuine issues of material fact exist, we ask if 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

Myriad has moved for summary judgment on Motorola's claims for breach of contract and breach of implied contract. Myriad argues that it did not breach its contract with Motorola (the MLSA) with respect to the Grant and Harvey phones, because a different contract—the MBLA, Myriad's agreement with Compal—governed its work on those phones. Myriad concedes that the MLSA governed its work on the Verizon phone, but it contends that Motorola's breach of contract claim with respect to the Verizon phone is time-barred. Myriad further argues that Motorola's implied contract claim fails as a matter of law, because written contracts comprehensively cover the

6

subject matter at issue. Finally, Myriad contends that Motorola cannot seek lost profits and various expenses as damages because they are precluded by the liability limitation clause of the MLSA.

**A.      Breach of contract – Grant and Harvey phones**

Count 1 of Motorola's most recent amended complaint is for breach of contract by Myriad regarding the Harvey, Grant, and Verizon phones. Myriad argues that the MLSA does not apply to the work it performed on the Harvey and Grant phones and thus that Motorola's claim for breach of the MLSA fails as a matter of law. Instead, Myriad says, the MBLA between Myriad and Compal is the sole contract governing this work. As support, Myriad points to language in the agreements between Motorola and Compal and between Compal and Myriad, as well as other evidence. This includes spreadsheets indicating time that Myriad engineers worked on the phones, which Myriad submitted to Compal (not Motorola), as well as documentation of time that Myriad billed to Motorola for software work that did not include the words "Harvey" or "Grant."

Myriad argues that the agreement between Compal and Motorola indicates that Compal was to provide finished phones for Motorola and deliver software necessary for those phones. Myriad says that its engineers worked directly with Compal to integrate Myriad's browser software into the Harvey and Grant phones and to fix the errors in the software once discovered. It contends that the spreadsheets denote time spent working specifically on the Harvey and Grant phone fixes, and they say there is no evidence that Motorola paid Myriad for this work. This, Myriad says, supports the proposition that its work on the software was done for Compal under its agreement with that company, not

7

for Motorola under the MLSA. (Myriad concedes that Motorola paid royalties to Myriad for its software in the Grant phone, but it argues that Motorola never paid Myriad for its work on the Harvey phone, which as indicated earlier was never released publicly.)

Despite the fact that it has moved for summary judgment, Myriad has managed to turn the issue of which contract governed the work on the Harvey and Grant phones into a question of fact. Myriad relies not only on the language of contracts other than the one under which Motorola is suing, but also on evidence extrinsic to the contracts. There are conflicts in the evidence such that more than one reasonable inference might be drawn. As a result, there are disputed of material fact that make summary judgment inappropriate.

For example, although the master contract between Compal and Motorola declares that Compal is to supply "all software" in the phones it produces, the supply agreements between those parties on the individual phones each indicate that the presence of the mobile browser in the phone is "paid by" Motorola. Thus there is conflict in the evidence about who paid for the work and thus what contract governed the work. Further, although the MBLA gives Compal a license to bundle Myriad's software on "Enabled Devices," a 2007 amendment excluded "any device manufactured or otherwise designed, developed, or distributed by Motorola" from the universe of "Enabled Devices." Myriad says that enabled devices were only those "for which royalty payments were due to Myriad," Repl. at 4–5, yet the original definition of that term says nothing of the sort; it mentions only devices that are "manufactured," not purchased by

someone. Defs.' Holm Decl. Ex. 2 at MYR012193.[2] In short, there is evidence that a reasonable fact finder could determine reflected an intent to exclude phones made for or by Motorola from the MBLA. This gives rise to a dispute of material fact on whether the MBLA governed the work on the Harvey and Grant phones.

In addition, Motorola agreed in a 2008 amendment to the MLSA to pay Myriad's predecessor "a per-unit royalty fee" for each device with the browser software that is "manufactured and shipped, sublicensed and/or otherwise distributed by Motorola." Pl.'s Ex. 24-e at 55. Myriad argues this language applies only to "Enabled Devices," or "fully developed phones sold to Motorola customers," which are "manufactured and shipped . . . or otherwise distributed by Motorola," leaving out the "sublicensed and/or" part of the contract. Repl. at 6. This is a curious omission; the "sublicensed" term at least suggests the possibility that the phones in question need not have been fully developed or sold to Motorola customers. There is thus some evidence that Motorola was already paying Myriad for its software when Myriad placed its software into the Harvey and Grant phones.

As for why the MLSA does not apply to the Harvey and Grant phones, Myriad observes that Motorola purchased support hours for Myriad's work on the Verizon phone, but not on Harvey or Grant. Motorola "was never invoiced directly by Myriad for any of its work on the Harvey and Grant phones," Myriad says, adding that Motorola cannot point to any invoice or other document showing work by Myriad for Motorola on

---

[2] Myriad also argues that an appendix to an amendment of the MBLA shows that "Enabled Devices" are those for which a royalty was due to Myriad. This appendix simply shows a list of payments Compal was to pay to Myriad for its browser and does not mention "Enabled Devices" or help to define the term. *See* Defs.' Holm Decl. Ex. 2 at MYR012271.

these phones. Defs.' Mem. at 11. It is true that there is no invoice in evidence from Myriad to Motorola detailing hours Myriad worked on those phones. Yet as Motorola argues, there was an amendment to the MLSA, in effect at the time, on which Motorola had already promised to pay Myriad a minimum of $495,000 for maintenance and support. Motorola has cited deposition testimony from Myriad's sales representative that, given the $495,000 fee, Myriad would not bill Motorola for hours worked on individual projects:

> Q    So you are saying that there had to be a purchase order for the big block or a big block of time in place, generally speaking, to perform any services, but you didn't require an individual purchase order for each item?
>
> A    Correct.

Pl.'s Ex. A at 202–03. This evidence indicates a genuine factual dispute on whether Myriad's work on Harvey and Grant was performed under the MLSA. Motorola had already agreed to pay Myriad a significant amount for its support work, and the fact that Myriad cannot find spreadsheets documenting the work it may have performed for Motorola on Harvey and Grant does not mean there is no genuine factual dispute on whether it did the work for Motorola.

Motorola also cites a meeting in which Myriad employees met with Motorola and Tracfone employees about a defect in the Harvey phone's browser software. It argues that this meeting represented direct work by Myriad for Compal on one of the phones in question. This evidence is further reflective of a factual dispute on whether Myriad's Harvey and Grant work was for Motorola under the MLSA. Myriad argues the error had been resolved before the meeting took place. Nonetheless, this indicates that Myriad's participation in the meeting was rendered in a support capacity to someone *other than*

Motorola. This is especially so given Motorola's extant $495,000 acquisition of support help from Myriad. Although Myriad disputes its own motivations for attending the meeting, no one is contending that it attended the meeting pursuant to its MBLA contract with Compal. This, again, indicates a genuine factual dispute on whether Myriad was indeed working for Motorola on this phone.

Given the evidence described above, Myriad has not discharged its "initial burden" to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In any event, Motorola has satisfied its burden as nonmovant by "point[ing] to facts in the record showing there is a genuine issue for trial." *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007). In addition to the matters described above, there is a factual dispute on whether Myriad would have needed to invoice Motorola for hourly work on Harvey and Grant under the MLSA, considering Motorola's promise to pay Myriad a $495,000 support fee. This dispute and others throughout the record make it clear that summary judgment is inappropriate on the Harvey and Grant aspects of Motorola's breach of contract claim.

In its initial memorandum, Myriad contended that the question of which contract applies to a dispute is a question of law that is "particularly well-suited for resolution by summary judgment." Defs.' Mem. at 4. However, the Seventh Circuit case Myriad cites for that proposition does not contemplate a situation in which a court is faced with two or more contracts that plausibly govern a certain course of conduct. *See Baker v. Am.'s Mortg. Servicing, Inc.*, 58 F.3d 321, 326 (7th Cir. 1995) (discussing only the Illinois rule that courts must interpret ambiguous contracts). Myriad also cites a district court case from New York in which the court granted partial summary judgment after deciding that

one contract governed a dispute and not another contract at issue. *See St. Paul Travelers Ins. Co. v. M/V Madame Butterfly*, 700 F. Supp. 2d 496 (S.D.N.Y. 2010). In that case, however, it was "clear from the undisputed facts" that one of the contracts applied and not the other. *Id.* at 503. That is not the situation here, as discussed above; it is not at all clear which contract governed.

In its reply, Myriad likewise cites cases presenting significantly more straightforward situations involving multiple contracts than what we have here. Furthermore, courts in this district as well as others have found that a determination of which of two or more contracts applies to a dispute is, or at least can be, a question for the finder of fact. *See C.C.S. Chi. Recreation, Inc. v. Am. Suzuki Motor Corp.*, No. 90 C 2171, 1996 WL 99906 (N.D. Ill. Mar. 1, 1996) (noting that "a jury must determine which contract governs"); *Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805, 830 (E.D. Mich. 2010) ("[T]he record and legal argument presented on this issue remains insufficient to permit the Court to determine which contract was in effect at the time of Plaintiff's termination . . . ."); *Bivens v. Taylor, Wiseman & Taylor*, 511 F. Supp. 2d 452, 458 (D.N.J. 2007) ("[T]here remains a genuine issue of material fact as to . . . which contract governs the Consulting Agreement between the parties."); *Hadsell v. CACH, LLC*, No. 12-CV-235-L-RBB, 2013 WL 4517842 (S.D. Cal. Aug. 23, 2013) ("[T]here is a genuine issue of material fact regarding which contract is the operative one.").

In short, the question of which contract governed the work Myriad performed on the Grant and Harvey phones depends on genuine factual disputes. Although each side has argued that it is clear that one particular contract governs, neither of them has shown it is correct as a matter of law. It is not entirely clear to the Court how the parties

12

will present this question to a jury, but on the present record that is what is required.

## B. Breach of contract – Verizon phone

On Motorola's breach of contract claim found in Count 1, Myriad concedes that the MLSA applies to the work it did for Motorola on the Verizon phones. It argues, however, that Motorola's claim with respect to those phones is time-barred.[3] The parties agree that claims accruing more than four years before a lawsuit commences are time-barred and that Motorola's claim needs to have accrued by February 24, 2008. But the parties otherwise disagree. Myriad says that a claim for breach of contract accrues at the time the contract was breached. Specifically, it argues that its predecessor refused to defend and indemnify Motorola on January 9, 2007, and thus Motorola's ability to bring the claim expired on January 9, 2011, well before it asserted such a claim. Motorola says the earliest date the claim accrued was July 2008, when it began paying Verizon for attorney's fees Verizon incurred in connection with a class action over one of the browser errors.

Motorola's statement of the law is the correct one. "It is clear that a cause of action on an indemnity agreement does not arise until the indemnitee either has had a judgment entered against him for damages, or has made payments or suffered actual loss." *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 199, 538 N.E.2d 530, 539 (1989). Defendants cite a 1992 case from the Seventh Circuit and another from this district (citing the 1992 case) to support their argument, but those cases cite Illinois appellate decisions that predate *Gerill*. *See Carroll v. Acme-Cleveland Corp.*,

---

[3] Myriad also contends that Motorola's defective software claim regarding the Verizon phones is time-barred, but Motorola says in its response that it is asserting no such claim with respect to the Verizon phones.

955 F.2d 1107, 1113 (7th Cir. 1992); *Singer v. Bulk Petroleum Corp.*, 9 F. Supp. 2d 916, 923 (N.D. Ill. 1998). The Seventh Circuit has since articulated the Motorola/*Gerill* version of this rule. *See Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 650 (7th Cir. 2003) ("Indemnity claims . . . do not accrue until the main action has been resolved via judgment or settlement.").)

Myriad argues, however, that even if the Court agrees with Motorola that its claim accrued only once there was an actual payment or a judgment, the claim is still time-barred. In particular, Myriad argues that Motorola had suffered actual loss via internal investigation costs and attorney's fees by January 9, 2007. Motorola says internal costs are irrelevant, because the indemnification claim is linked to its payment of legal expenses to Verizon. Each party argues the policy implications of the other's position on this question, but ultimately, Myriad does not cite any law to support its argument that incurring internal costs triggers accrual of an indemnification claim. Motorola is seeking indemnification based on what it had to pay out as a result of various lawsuits; it is not seeking recovery of its internal costs. Considering Illinois law on this topic discussed above, Myriad offers no viable basis supporting its contention that Motorola's claim accrued when before it had to pay out on its own indemnification obligations, which was less than four years before it filed this claim. The Court therefore concludes that Myriad is not entitled to summary judgment on Motorola's breach of contract claim with respect to the Verizon phone. Indeed, Motorola likely is entitled to a finding that the claim is not time-barred.

**C.    Breach of implied contract**

In Count 3 of the most recent version of its complaint, Motorola claims that even

14

if the MLSA is inapplicable to Myriad's work on the phones at issue, Myriad breached an implied contract with Motorola to deliver functioning browser software in the Harvey and Grant phones. In its reply, Myriad argues that the MLSA was a fully integrated and exclusive agreement between Myriad and Motorola, and thus there cannot be an implied contract. Myriad also argues, citing a case on "quasi-contract," that Motorola cannot make contract and implied claims in the same lawsuit.

In their initial memorandum, Myriad argued the first point only with respect to the Verizon phones, not the Harvey and Grant phones; in the reply, it argued the point as to all of the phones. Yet this Court already "note[d], in particular, that plaintiff is entitled to plead claims of express and implied contract in the alternative." Order Granting Pl.'s Mot. To File Fifth Am. Compl. (dkt. no. 91) ¶ 4. The second point, concerning quasi-contract, was not in Myriad's initial memorandum and could be regarded as new in the reply and thus forfeited for present purposes. Regardless, this point is inapplicable. The case Myriad cites for this point covers "contract[s] implied in law, or a quasi-contract," which the very case that Myriad cites says "arise when there is no contract, either express or implied." *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill. App. 3d 357, 360, 432 N.E.2d 999, 1002 (1982). Motorola, however, is making an implied-in-fact contract claim. Quasi-contract claims, in Illinois parlance, are those in which the law imposes a duty, such as in an unjust enrichment claim. They are distinct from implied-in-fact contract claims. *See Brody v. Finch Univ. of Health Sci.*, 298 Ill. App. 3d 146, 154, 698 N.E.2d 257, 265 (1998) (distinguishing the "two types of implied contracts" recognized in Illinois: an implied in fact contract, which "contains all of the elements of an express contract," and quasi-contracts, or contracts implied in law, which

"result, notwithstanding the parties' intentions, from a duty imposed by law").

In sum, Myriad provides no viable reason why Motorola cannot proceed with its alternative implied-in-fact contract claim.

**D.     Damages**

Myriad contends that if the MLSA applies to the browser that caused the errors in this case, Motorola cannot recover lost profits, unused hardware expenses, and engineering expenses the browser caused. This argument focuses on section 15 of the MLSA, which states that neither Motorola nor Myriad is "liable for any indirect, special or consequential damages" that are "suffered by the other party, any end user, customer, sublicensee, var. [sic] enabled device manufacturer, vendor or any distributor." Pl.'s. Ex. 24-a at 36; *see also* Pl.'s Ex. 24-e at 59 (2008 amendment to this section). These non-recoverable damages include "without limitation, lost profits, business interruptions or other economic loss arising out of the use the [sic] technology licensed herein." Pl.'s Ex. 24-e at 59.

Motorola urges a limiting construction of the word "use" in the phrase "loss arising out of the use [of] the technology licensed herein." It contends that "use" means use of the product after it is released to the public. Because the errors in the Harvey and Grant phones were discovered before those phones were released to the public, Motorola argues, its damages do not result from "use" of the technology, and thus section 15's limitation on liability does not apply. The term "use" does not appear to be defined in the MLSA or its amendments, and Motorola offers nothing from the contract itself or from any other source that supports its proposed construction. Motorola also notes, however, that section 15 originally applied to "performance or non-performance"

16

of the software in addition to "use." See Pl.'s Ex. 24-a at 36. Motorola contends that eliminated reference to "performance or non-performance" is "more general[ ]." Thus, Motorola argues, the removal of this language from section 15 "demonstrates the parties' intent to confine the application" of the section to post-release use in the market, Pl.'s Resp. at 17, or at least shows a genuine factual dispute about the correct interpretation of this section.

Myriad does not answer this particular aspect of Motorola's argument. It contends in its reply simply that Motorola's construction of "use" "is not supported by the unambiguous language of the MLSA." Defs.' Repl. at 11. In Illinois, if a contract's language "is susceptible to more than one meaning, it is ambiguous." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (2007). Here, the Court finds the contractual term ambiguous, which renders its construction a question of fact on which extrinsic evidence is admissible to ascertain the parties' intent. *See Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011). *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991). Motorola's argument does not account for section 15's inclusion of "vendor[s]" and "distributor[s]" along with "end user[s]" and "part[ies]," which was left untouched in the 2008 amendment and might suggest an intention to cover pre-market-release use. All else being equal, however, the removal of the "performance or non-performance" section presumably meant something.[4] It is not clear, however, why that was done or how it changed the

---

[4] The same is true of the modification of the damages limitation from one that barred consequential damages arising out of "any use or failure to be able to use" the technology to one that barred consequential damages arising from "the use [of]" the technology, eliminating the "failure to be able to use" term.

scope of the contractual term. In sum, the term "use" appears to be ambiguous, particularly in light of the modification of the contractual provision in which it is found. There is a decent chance that extrinsic evidence would assist in resolving the issue. The Court concludes that summary judgment on this aspect of Motorola's damages claim on the Harvey and Grant phones is inappropriate.

For the sake of completeness, the Court will address the parties' other arguments on the issue of damages. Motorola also argues that some of the damages it seeks—the "engineering, testing, and materials costs" it accrued on the Harvey and Grant phones—are direct damages, not indirect, and thus are not barred by section 15 of the MLSA. Myriad relies on UCC § 2-714(2), which permits recovery of the difference on a breach of contract "between the value of the goods accepted and the value they would have had if they had been as warranted." 810 ILCS 5/2-714(2). According to Myriad, that measure precludes the types of damages that Motorola seeks. Motorola contends, however, that "courts often refer to repair or replacement costs as a proper measure of [the] damages" recoverable under section 2-714(2). This does appear to be the law in Illinois. *See IMI Norgren Inc. v. D&D Tooling & Mfg., Inc.*, 247 F. Supp. 2d 966, 971 (N.D. Ill. 2002) (collecting cases and noting that "it is well settled in Illinois that the measure of direct damages for a breach when a defendant has provided less than full performance or has provided defective performance is the cost of correcting the defective condition"). Myriad cites only cases from Louisiana and the Third Circuit that do not reflect this Illinois rule, and it argues without support that the types of expenses that Motorola seeks to recover are "hornbook examples" of indirect damages. Defs.' Mem. at 25; Defs.' Repl. at 12. Even if Motorola cannot recover its claimed lost profits

as part of its damages, it has convincingly shown that it is not barred from proceeding with its claimed damages on its engineering, testing, and materials expenses on the Harvey and Grant phones.

Finally, Motorola says that its indemnification claim permits it to recover all of its damages, including lost profits and other costs, because the indemnification section of the MLSA permits Motorola to recover "any damages, liability or other expenses." Pl.'s Ex. 24-a at 34 (MLSA § 11.1.1). Yet as Myriad points out, the first words in section 15—both the original and amended version—are "Except for a breach of Section 13 ("Confidentiality")," indicating that section is the only one immune from the liability limitation in section 15. This reading is accurate. The language in section 15 is general, and the carve-out of section 13 makes it rather clear that no other contractual provision is excepted.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion for summary judgment [docket no. 145]. The case is set for a status hearing on April 1, 2014 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 22, 2014